## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.: 17-cv-01064-NYW**

JEFF PETERSON, personal representative of the Estate of Andrew Peterson,
on behalf of the Estate and all similarly situated persons,

      Plaintiff,

v.

NELNET DIVERSIFIED SOLUTIONS, LLC,
a Nebraska limited liability company

      Defendant.

---

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENT

---

Plaintiff Jeff Peterson, personal representative of the Estate of Andrew Peterson, on behalf of the Estate and the 336 Opt-In Plaintiffs ("Opt-Ins," listed at Exhibit A of the Settlement Agreement, and together with Jeff Peterson and the Estate, "Plaintiffs"), and Defendant Nelnet Diversified Solutions, LLC ("Defendant," and together with the Plaintiff and Opt-Ins, the "Parties"), by and through counsel, request that the Court approve their Settlement Agreement (the "Agreement"), which resolves all of Plaintiffs' claims in this matter pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (the "Motion").

**Certificate of Conferral Pursuant to D.C. COLO. L. Civ. R. 7.1(A):** Plaintiffs and Defendant conferred regarding this Motion. Nelnet does not oppose to the relief requested herein. While Nelnet does not oppose the relief requested in Paragraphs B(2) and (C), Nelnet takes no position as to the substance of those paragraphs.

## BACKGROUND

This settlement resolves heavily disputed litigation concerning allegations of unpaid wages under the FLSA. The Agreement is fair, reasonable, and adequate. It provides full damages – both actual unpaid wages and liquidated damages – to Plaintiff and all Opt-Ins for the full statute of limitations. The Agreement separately provides for Defendant to pay the costs of the settlement administration and to pay a separately-negotiated amount of Plaintiffs' attorneys' fees and costs. For the foregoing reasons, the Parties request that the Court approve this Agreement. A proposed order is attached as Exhibit A.[1]

### I.      Initial Discovery and FLSA Conditional Certification

In early 2016, Plaintiffs' counsel began investigating claims that Defendant did not pay all wages due to Call Center Representatives ("CCRs").[2]  Shavitz Decl. ¶ 18.  On April 15, 2016, Plaintiffs' counsel sent correspondence to Defendant about these claims, inviting Defendant to engage in pre-litigation settlement discussions. *Id*.  Thereafter, Defendant's counsel responded and the Parties shared information and discussed resolution. The Parties entered into a tolling agreement which preserved the FLSA and state statutes of limitations for certain CCRs so that their claims did not expire while settlement discussions occurred. (ECF No. 29, fn. 1.)  The Parties were unable to make progress towards settlement, and on April 28, 2017, former Plaintiff Andrew Peterson filed a Complaint asserting unpaid wage claims on a collective action basis under the FLSA and class action basis under Colorado state law. ECF No. 1.

Defendant filed a motion to dismiss (ECF No. 19), and Plaintiff filed an Amended

---

[1] The referenced exhibits are attached to the Declaration of Gregg. I. Shavitz, Esq.

[2] The term "CCRs" as used herein refers to the positions Advisors I, certain Collectors, and Flex Advisors.

Complaint (ECF No. 29). The Parties also negotiated and submitted a proposed Scheduling Order (ECF No. 22), which outlined the plan for first-phase discovery relating to FLSA conditional certification issues. The Scheduling Order was entered by this Court on August 22, 2017 (ECF No. 27). In July, August, and September 2017, the Parties served initial disclosures and discovery requests and responses. Shavitz Decl. ¶ 23. Nelnet produced thousands of pages of documents relating to the claims and defenses. *Id.* In December 2017, Plaintiffs took two Rule 30(b)(6) depositions, and Defendant deposed Plaintiff Peterson and two Opt-Ins. ECF Nos. 51-2 – 51-6.

Plaintiffs moved to compel the contact information of the putative FLSA collective action members. (ECF No. 42.) The Court granted in part and denied in part Plaintiffs' motion on February 2, 2018. (ECF No. 57.)

Plaintiffs filed a motion for FLSA conditional certification on January 31, 2018. (ECF No. 50.) Defendant opposed the motion on February 21, 2018 (ECF No. 65) and Plaintiffs replied on March 7, 2018. (ECF No 68.) The Parties argued the motion before the Court on April 4, 2018. (ECF No. 78.) The Court granted Plaintiffs' motion on April 25, 2018. (ECF No. 79.)

After the Court granted Plaintiffs' motion for FLSA conditional certification, the Parties conferred about the FLSA notice and consent form to be sent to collective action members. The Parties had certain disputes and briefed the issues with the Court. (ECF No. 85.) After the Court resolved the issues, Plaintiffs' counsel retained Rust Consulting to administer the notice to approximately 3,000 FLSA collective action members and 336 Opt-In Plaintiffs are currently in the case. (ECF No. 92; *see also* Shavitz Decl. ¶ 27.)

## II.    Second Phase of Discovery

Following the conclusion of the FLSA notice period, the Parties conferred about a plan for discovery for the remainder of the case; the Parties disagreed about the extent of discovery of the Opt-Ins and submitted a proposed Supplemental Scheduling Order with the parties' positions on October 10, 2018.  (ECF No. 108.)  The Court entered a discovery order which permitted 30 depositions per side and allowed Defendant to serve written discovery requests on 45 Opt-In Plaintiffs. ECF No. 119.  The parties submitted a proposed Supplemental Scheduling Order on November 28, 2018 (ECF No. 120) and the Court entered the Supplemental Scheduling Order on November 29, 2018. (ECF No. 123.)

The Parties served their discovery requests and hundreds of responses to stock interrogatories and requests for production per side.  Shavitz Decl. ¶ 29.  Defendant deposed 28 Opt-In Plaintiffs at various locations throughout Colorado and Nebraska. (*See, e.g.*, ECF Nos. 168-2 – 7, 10, 12-14, 17-22, 24-25, 28; ECF 171-8 – 30, 34, 36.)  In February and March 2019, Plaintiffs deposed Defendant's Rule 30(b)(6) designees relating to merits and affirmative defenses and also electronic discovery.  Shavitz Decl. ¶ 29.  Defendant produced approximately 52,000 pages of documents including e-mails, policies and procedures, training documents, job descriptions, timekeeping and compensation practices, and data concerning the computer login issues.  *Id.*

Defendant retained an expert who prepared an expert report and thereafter an amended expert report.  Shavitz Decl. ¶ 30.  The expert analyzed Defendant's data regarding the FLSA claims to calculate how much time Plaintiffs spent performing pre-Clock-In activities.  *See* ECF No. 159-1 at Ex. D.

The Parties also had multiple discovery disputes relating to the sufficiency of the Parties'

discovery responses and document production.  (*See* ECF No. 168-16.)  The Court addressed

many discovery disputes throughout the second-phase of discovery and regularly held Court

conferences to address discovery disputes and to keep the Parties on track to complete discovery.

(*See generally* ECF Nos. 127, 138, 151, 160, 165.)

### III.   Summary Judgment and Decertification Motions and Pre-Trial Work

The Parties submitted competing motions for summary judgment in March and May of

2019.  (ECF Nos. 158, 168.)  The Parties submitted opposition papers and replies, along with

their statements of fact and counterstatements. (ECF Nos. 174, 175, 179, 180.)

On May 15, 2019, Defendant also moved to decertify the FLSA collective action.  (ECF

No. 171.)  Plaintiffs opposed that motion.  (ECF No. 172.)  The summary judgment and

decertification motions and exhibits encompass hundreds of pages of documents, deposition

testimony, declarations, and electronic records.  (*Id.*)

While the motions were pending, the Parties prepared for trial and submitted proposed

Pre-Trial Orders on July 24, 2019 and August 22, 2019.  (ECF Nos. 182 and 185.)

On August 23, 2019, the Court granted Defendant's motion for summary judgment,

denied Plaintiffs' motion for summary judgment, and denied Defendant's motion for

decertification as moot.  (ECF No. 186.)

On September 3, 2019, the Court amended its August 23, 2019 Order awarding

Defendant, as the prevailing party, its costs.  (ECF No. 189.)

### IV.   Litigation Regarding Taxable Costs

Following the Court's decision on Defendant's motion for summary judgment, Defendant

submitted its Bill of Costs on September 17, 2019.  (ECF No. 194.)  The Parties litigated the

amount of Defendant's taxable costs and the types of costs that Defendant sought to tax against

Plaintiffs.  (ECF Nos. 196, 202-206, 208, 209, 210-211, 215, 223, 225, 230, 232, 233.)

## V.    Appeals

Plaintiffs filed two notices of appeal.  (ECF Nos. 191, 236.)  The first appeal related to the Court's order granting Defendant's motion for summary judgment.  (ECF No. 191.) The second appeal related to the taxable costs awarded.  (ECF No. 236.)

On March 23, 2020, Plaintiffs filed a Motion to Substitute Jeff Peterson, personal representative of the Estate of Andrew Peterson, for Plaintiff Andrew Peterson who passed away. Shavitz Decl. ¶ 38.  The Tenth Circuit granted the Motion to Substitute on March 30, 2020.  *Id*.

On June 5, 2020, Plaintiffs filed their appellate brief concerning the summary judgment motion and a corrected appellate brief on June 11, 2020.  Shavitz Decl. ¶ 39.  Defendant submitted its answer brief on August 12, 2020.  *Id*.  Plaintiffs filed their reply brief on September 16, 2020.  *Id.*

Plaintiffs submitted their taxable cost appellate brief on September 3, 2020.  Shavitz Decl. ¶ 40.  Defendant submitted its answer brief on November 4, 2020.  *Id*.  Plaintiffs filed their reply brief on December 8, 2020.  *Id.*

The Parties also prepared for oral argument, which the Tenth Circuit held on March 8, 2021.  Shavitz Decl. ¶ 41.

On October 8, 2021, the Tenth Circuit issued an Opinion reversing the Court's Order granting Defendant's motion for summary judgment and directing the Court to enter an Order for partial summary judgment in Plaintiffs' favor on the issues of compensability and the inapplicability of the de minimis doctrine.  (ECF No. 243 at p. 31.)  Defendant filed a petition for rehearing *en banc* on November 8, 2021.  Shavitz Decl. ¶ 43.  Plaintiffs submitted an opposition brief on November 19, 2021.  *Id.*  The Tenth Circuit denied Defendant's petition for rehearing *en*

*banc* on December 9, 2021. *Id.*

On December 17, 2021, the Tenth Circuit issued a Statement of Costs in Appellants' favor. *Id.* ¶ 44. The Tenth Circuit also issued its mandate on the same date. *Id.* ¶ 44.

**VI.    Settlement**

After the Tenth Circuit issued its Opinion on October 8, 2021, the Parties conferred about the possibility of settling this matter. Shavitz Decl. ¶ 46. Plaintiffs' Counsel prepared initial settlement drafts outlining the terms of a settlement agreement including notice materials to be sent to the Opt-In Plaintiffs. *Id.* Over the course of the next two months, the Parties engaged in arms-length negotiations to work towards resolving these claims. *Id.* On December 14, 2021, the Parties reached an agreement on the Plaintiffs' Settlement Payment Amount for the unpaid wages and liquidated damages. *Id.* On December 21, 2021, the Parties reached agreement on Plaintiffs' Counsel's attorneys' fees and costs. The Agreement is attached as <u>Exhibit B</u>.

**SETTLEMENT TERMS**

**I.    Plaintiffs' Settlement Payment Amount**

Pursuant to the terms of the Agreement, Defendant has agreed to pay all FLSA damages owed to Plaintiff and Opt-In Plaintiffs, including liquidated damages, for the full statute of limitations. Using the calculations from Defendant's expert report along with the time records and shift data, the Parties calculated the full amount of FLSA damages and liquidated damages for the Plaintiff and all Opt-In Plaintiffs which is $87,492.48. Shavitz Decl. ¶ 47. Defendant agreed to pay this amount pursuant to the Agreement and the allocation to Plaintiff and each Opt-In is attached as Exhibit A to the Agreement.

Defendant has also agreed to pay services awards of $6,000.00 to Jeff Peterson, as personal representative of the estate of Andrew Peterson, and $100.00 each to 29 Opt-In

Plaintiffs who were deposed in both phases of discovery, which covers the $40.00 witness fee they are entitled to per 28 U.S.C. 1920(3).  Exhibit B (Agreement) at § II(C).

## II.    Plaintiffs' Counsel's Attorneys' Fees and Costs

After the amount to be paid to Plaintiffs was agreed upon, the Parties separately negotiated the attorneys' fees and costs to be paid to Plaintiffs' Counsel per 29 U.S.C. § 216(b). Shavitz Decl. ¶ 49.  The Parties began such negotiations on November 4, 2021.  *Id.*  Over the course of the next month and a half, the Parties continued negotiations with multiple phone calls among counsel.  *Id.*  On December 21, 2021, the Parties reached a resolution and Defendant has agreed to pay Plaintiffs' Counsel $1,600,000.00 (pursuant to the terms of the Agreement), which is approximately 72% of fees and out-of-pocket costs incurred by Plaintiffs' counsel.  *Id.* ¶ 49.[3] Exhibit B (Agreement) at § II(D) and Exhibit E to Agreement; Shavitz Decl. ¶ 55 (Plaintiffs' Counsel's total fees and costs incurred are $2,219,491.64).

## III.    Settlement Administration Costs

Pursuant to the terms of the Agreement, Defendant has retained Rust Consulting, Inc. ("Rust") to administer the settlement.  Rust will, among other things, prepare the settlement notice and checks to be sent to the Opt-In Plaintiffs, re-mail notices and checks that are returned as undeliverable, and confirm the accuracy of the addresses to ensure the checks reach the Opt-In Plaintiffs.  Exhibit B (Agreement) at § II(B), II(G) ¶ 2-5.  Rust shall also establish a toll-free number and e-mail address to assist Opt-In Plaintiffs with requests for re-mailing and answering any questions regarding the settlement.  Exhibit B at § II(B).

---

[3] Plaintiffs' Counsel anticipate spending additional time overseeing the settlement and administration of the settlement.  The $1,600,000.00 is intended to compensate Plaintiffs' Counsel for the additional work to occur in the future.

### IV.    Release of Claims

Pursuant to the terms of the Agreement, the release covers unpaid overtime wages under the FLSA during Plaintiffs' employment as CCRs including FLSA claims for unpaid wages, unpaid overtime wages, liquidated damages, attorneys' fees, and costs.  Exhibit B at § II(F).  The release covers the full statute of limitations, which is defined in the Agreement as the settlement "Timeframe," from July 14, 2014 through March 13, 2020 for Colorado employees and from July 14, 2014, through December 18, 2020 for Nebraska employees.  *Id.*  The Timeframe of the release and calculation of backpay do not run to the present date because Defendant has represented to Plaintiffs' Counsel that it changed its pay practices on March 13, 2020 in Colorado and December 18, 2020 in Nebraska.  Shavitz Decl. ¶ 51.

### ARGUMENT

The Agreement is fair and reasonable to all Parties, and represents a reasonable resolution of this matter; accordingly, it is appropriate to approve the Agreement.

Employees may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement.  *See Bracamontes v. Bimbo Bakeries USA, Inc*., No. 15-CV-02324-RBJ-NYW, 2018 WL 6790171, at *1 (D. Colo. Oct. 10, 2018) (including citation to *Lynn's Food Stores*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  "[I]n determining whether to approve a FLSA settlement, this Court considers whether (1) the FLSA settlement is reached as a result of a *bona fide* dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees."  *Herring v. Thunder Ridge Trucking & Filtration, Inc*., No. 15 Civ. 00062, 2016 U.S. Dist. LEXIS 182807, at *5 (D. Colo. May 24,

2016).[4]

### A.    The Settlement Resolves a *Bona Fide* Dispute of FLSA Claims

For the Court to determine whether a *bona fide* dispute exists, "the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage."  *Cooper v. OFS 2 Deal 2, LLC*, No. 15 Civ. 1291, 2016 U.S. Dist. LEXIS 35283, at *5-6 (D. Colo. Mar. 17, 2016).

"The Court considers several factors when evaluating the fairness of a settlement: '(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.'"  *Id.* (quoting *Baker v. Vail Resorts Mgmt. Co*., No. 13 Civ. 1649, 2014 U.S. Dist. LEXIS 22812, at *6 (D. Colo. Feb. 24, 2014)).

This case may be the perfect example of a *bona fide* dispute of FLSA claims.  The Parties

---

[4] It is appropriate for this Court to review this proposed Agreement.  *See, e.g.*, *Porter, et al., v. BASF Corp.*, No. 19-CV-01352-KLM, 2021 WL 4426954, at *1 (D. Colo. Sept. 27, 2021) (citing *Slaughter v. Sykes Enters., Inc*., No. 17-cv-02038-KLM, 2019 WL 529512, at *1-6 (D. Colo. Feb. 11, 2019) ("'while there is disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court.'") (Emphasis in original.); *see also Bracamontes*, 2018 WL 6790171, at *1 ("Because the issue is not yet settled by the United States Court of Appeals for the Tenth Circuit ('Tenth Circuit'), this court proceeds with applying the standard utilized by courts in this District to consider whether it can approve the settlement.").

fiercely disputed each side's legal position during this nearly five-year long litigation.  *See supra* at pages 2-7.  The FLSA claims addressed Plaintiffs' allegations that Defendant did not pay for some pre-shift time spent booting up their computers and launching Citrix and the intranet before they clocked in.  (*See generally* ECF No. 243.)

Defendant argued that Plaintiffs' pre-clock in work was not compensable under the FLSA and, even if it was compensable, Defendant argued that under the law, it was not obligated to pay for such time due to the *de minimis* exception to the FLSA.  Plaintiffs disagreed, arguing that the work was compensable and that the *de minimis* exception does not apply.  The Parties thoroughly briefed these legal issues in their summary judgment motions.  (ECF Nos. 158, 168, 174, 175, 179, 180.)

This Court agreed with Defendant's position and granted Defendant's motion for summary judgment.  (ECF No. 186.)  The Tenth Circuit agreed with Plaintiffs' position and entered summary judgment in Plaintiffs' favor.  (ECF No. 243.)  Therefore, a *bona fide* dispute of FLSA claims exists here, supporting the settlement.

**B.     The Settlement Is Fair and Equitable to All Parties**

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee[] and must not frustrate the FLSA policy rationales."  *Cooper*, 2016 U.S. Dist. LEXIS 35283, at *7.

*1.     Defendant Agreed to Pay Plaintiffs All Claimed FLSA Damages*

Unlike a typical FLSA settlement where there is a compromise in the amount of damages owed to the plaintiffs, this Agreement provides full FLSA damages to Plaintiff and the Opt-Ins including all unpaid wages and liquidated damages under the FLSA for the full statute of limitations.  *See* Exhibit A to Agreement.  There was no compromise as to these damages and

Defendant is paying all FLSA damages, highlighting the fairness of the settlement and
negotiations surrounding it.  Shavitz Decl. ¶ 47.  Given that Defendant is paying all FLSA
damages claimed during the entire FLSA statutory period (and not the typical two-year period
per 29 U.S.C. § 255), and given that Plaintiffs were not entitled to these payments at present
(given that Defendant could have sought review by the U.S. Supreme Court and/or revived the
decertification at the district court level), the Parties submit that the Agreement is reasonable and
should be approved.

  The release of claims in the Agreement (as described in the Notice) is also appropriately
tailored to cover the claims in this case – unpaid overtime wages under the FLSA during
Plaintiffs' employment as CCRs including FLSA claims for unpaid wages, unpaid overtime
wages, liquidated damages, attorneys' fees, and costs.  Exhibit B at § II(F); *see also* Exhibit C to
the Agreement.  As noted above, the release is limited to the time period of July 14, 2014
through March 13, 2020 for Colorado employees and from July 14, 2014 through December 18,
2020 for Nebraska employees.  *Id*.

    **2.**  ***The Court Should Approve Service Awards to Plaintiff and Certain Opt-
In Plaintiffs***

  The settlement also provides for modest service awards, which include statutory witness
fees of $40 for Plaintiff Peterson and 29 Opt-In Plaintiffs who participated in discovery and sat
for depositions.  Defendant is paying these service awards in addition to the unpaid wage and
liquidated damages portion of the Plaintiffs' Settlement Payment Amount.  Exhibit B
(Agreement) at § II(C).  Courts approve service awards in FLSA collective actions, recognizing
plaintiffs and opt-in plaintiffs for their efforts in the litigation which led to the settlement
achieved for the FLSA collective.  *E.g.*, *Whittington v. Taco Bell of Am., Inc*., No. 10 Civ. 01884,
2013 U.S. Dist. LEXIS 161665, at *23 (D. Colo. Nov. 13, 2013) (approving $7,500.00 service

award); *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016) (same); *Swanson v. Cathedral Energy Servs*., No. 17 Civ. 01578, 2019 U.S. Dist. LEXIS 170752, at *8 (D. Colo. Oct. 2019) (approving $6,000.00 service awards).

Plaintiff and the Opt-In Plaintiffs were instrumental in identifying the alleged wage violations and building the case. Shavitz Decl. ¶ 52-54. Plaintiff Jeff Peterson stepped in as personal representative of Andrew Peterson's estate to fulfill the role as Named Plaintiff after his son passed away and was willing to see this litigation through to the end. *Id*. ¶ 53. Former Plaintiff Andrew Peterson agreed to bring these claims as a FLSA collective action to attempt to recover unpaid wages for other CCRs. *Id*. ¶ 53. Former Plaintiff Peterson provided deposition testimony in this case, responded to discovery requests, and produced documents. *Id*. ¶ 53. He also provided the information necessary to allow Plaintiffs' Counsel to obtain evidence to support the claims and develop the case. *Id*. ¶ 53. The Opt-In Plaintiffs also prepared for depositions with Plaintiffs' Counsel and provided deposition testimony and responded to Defendant's discovery requests. *Id*. ¶ 53. In addition to their efforts in the litigation, service awards are appropriate to recognize the risks these individuals took in bringing claims against their employer and participating in the litigation. *Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 131-32 (D. Colo. 2016) (awarding service award in recognition of retaliation risks of suing employer); *Velez v. Majik Cleaning Serv*., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23 (same and holding that the plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). The service awards include the $40 statutory witness fee which the Plaintiff and Opt-In Plaintiffs are entitled per 28 U.S.C. 1920(3). For these reasons, the Parties request that the Court approve the service awards.

C.     **Defendant Also Agreed to Pay a Portion of Plaintiffs' Counsel's Reasonable Fees and Costs in Full Satisfaction of the Fee and Cost Claim**

Pursuant to 29 U.S.C. § 216(b), FLSA cases require settlement agreements to include "a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). "There is no precise rule or formula for making [fee award] determinations." *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435-37 (1983)). An attorney's fee award need not be proportionate to the damages award. *Id*.

Under the terms of the Agreement, and as the product of separate and arms'-length negotiations, Defendant has agreed to pay Plaintiffs' counsel for their reasonable attorneys' fees and costs.

As discussed below at page 18, Plaintiffs' Counsel spent 3,477.1 hours investigation and litigating this case over the last five years and have a total lodestar of $2,161,989.00. Shavitz Decl. ¶ 55. Plaintiffs' Counsel also spent $57,502.64 in litigation costs. *Id*. In total, Plaintiffs' Counsel incurred fees and costs of $2,219,491.64. *Id*. After negotiations with Defendant over the course of a month and a half, Plaintiffs' Counsel accepted Defendant's offer of $1,600,000.00 to pay Plaintiffs' Counsel fees and costs per 29 U.S.C. § 216(b). *Id*. ¶ 56. This amount is reasonable in light of the enormous amount of work performed by Plaintiffs' Counsel and 3,477.1 hours to obtain this result. Defendant shall pay Plaintiffs' Counsel their fees and costs in addition to the Plaintiffs' settlement amount. Exhibit B (Agreement) at § II(D).

"The FLSA entitles a prevailing plaintiff to recover 'a reasonable attorney's fee . . . and costs of the action.'" *Swanson*, 2019 U.S. Dist. LEXIS 170752, at *8 (quoting 29 U.S.C. § 216(b)) (citing *Gray v. Phillips Petrol. Co.*, 971 F.2d 591, 593 (10th Cir. 1992)). "For purposes

14

of attorneys' fees, plaintiff is considered a 'prevailing party' if he succeeds on any significant issue in litigation which achieves some of the benefit she sought in bringing suit." *Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, 2012 U.S. Dist. LEXIS 170177, at *26 (D. Kan. Nov. 29, 2012) (citing *Jackson v. Austin*, 267 F. Supp. 2d 1059, 1063 (D. Kan. 2003)). "The fee is mandatory, but the Court has discretion to determine the amount and reasonableness of it." *Swanson*, 2019 U.S. Dist. LEXIS 170752, at *8. "[T]here is a general preference that parties reach an agreement regarding the fee award." *Manohar v. Sugar Food LLC*, No. 16 Civ. 02454, 2017 U.S. Dist. LEXIS 116893, at *12 (D. Colo. July 26, 2017) (Wang, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").  "Courts may determine the reasonableness of a fee request by calculating the 'lodestar amount,' which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Manohar*, 2017 U.S. Dist. LEXIS 116893, at *12 (citing *Hensley*, 461 U.S. at 433); *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (same).  "The lodestar amount may be adjusted according to the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, or other factors." *Manohar*, 2017 U.S. Dist. LEXIS 116893, at *12 (citing *Tallitsch v. Child Support Servs., Inc*., 926 P.2d 143, 147 (Colo. App. 1996)).

Attorneys' fee awards do not need to be proportional to the amount of damages a plaintiff might recover.  "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Riverside v. Rivera*, 477 U.S. 561, 578 (1986).  The FLSA's fee shifting statutory provision for prevailing plaintiffs' counsel, 29 U.S.C. § 216(b), is meant to

attract competent counsel with the resources to litigate against well-funded employers.  *See id.*; *Vazquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA . . . were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.").

### 1.    *Plaintiffs' Counsel Spent 3,477.1 Hours Litigating this Case Since 2016*

Plaintiffs' Counsel's declarations contain the information required by D.C. COLO. L. Civ. R. 54.3 including the relevant qualifications and experience of the attorneys and staff members, summaries of the work performed by each firm and the amount of hours worked by each attorney and staff member, the hourly rates charged, and the total amount claimed.  Shavitz Decl. ¶ 4-15, 57; Gonzales Decl. ¶ 2-1, Ex. A; Hansen Decl. ¶ 2-5, 17; Rehm Decl. ¶ 1-13.[5]

The Shavitz Law Group, P.A. spent 2,762.2 hours litigating this case.  Shavitz Decl. ¶ 57. The Law Offices of Brian D. Gonzales, PLLC spent 362.4 hours litigating this case.  Gonzales Decl. ¶ 12.  Apollo Law LLC spent 319.6 hours litigating this case. Hansen Decl. ¶ 17.  Rehm Bennett Law Firm P.C., L.L.O. spent 32.9 hours litigating this case Rehm Decl. ¶ 13.  In total, Plaintiffs' Counsel spent 3,477.1 hours working on this case for Plaintiffs' benefit.  Shavitz Decl. ¶ 57; Gonzales Decl. ¶ 12; Hansen Decl. ¶ 17; Rehm Decl. ¶ 13.

Plaintiffs' Counsel worked for Plaintiffs on a contingency basis, risking non-payment of attorneys' fees and no reimbursement for their out-of-pocket costs if Plaintiffs lost this case.

---

[5] If the Court deems it necessary, Plaintiffs' Counsel can submit copies of their fee records for the Court's review.  Plaintiffs' Counsel would seek to submit these records under seal and for *in camera* review as they contain attorney-client privileged and work product information.  The fee records contain thousands of entries across hundreds of pages.

Shavitz Decl. ¶ 64; Gonzales Decl. ¶ 14; Hansen Decl. ¶ 6, 13; Rehm Decl. ¶ 10-13.

As detailed above at pages 2-7, this litigation was extremely hard fought and contentious, requiring substantial discovery, motion practice, and an appeal to reach this point of settlement. Plaintiffs' Counsel's work was necessitated in many respects by Defendant's aggressive litigation tactics. In fact, Plaintiffs tried to avoid protracted litigation by reaching out to Defendant pre-suit to try and settle. Shavitz Decl. ¶ 18-19. Additionally, Plaintiffs tried to stay or limit discovery during the second phase but Defendant objected and the Court denied Plaintiffs' request. (ECF Nos. 148, 150, 152); *see Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side").

Plaintiffs' Counsel attempted reasonable strategies to limit the hours spent litigating. *Slaughter v. Sykes Enters.,* No. 17 Civ. 2038, 2019 U.S. Dist. LEXIS 21767, at *24 (D. Colo. Feb. 11, 2019). Prior to filing the case and approximately 50 times during the course of the litigation, Plaintiffs' Counsel tried to encourage Defendant to mediate or have settlement discussions. Shavitz Decl. ¶ 66. Defendant never offered Plaintiffs any money to settle until after the Tenth Circuit decided the appeal. *Id*.

2.    <strong><em>Plaintiffs' Counsel's Rates Are Reasonable</em></strong>

Plaintiffs' Counsel include prominent wage and hour national litigators and appellate counsel. Shavitz Decl. ¶ 4-16; Gonzales Decl. ¶ 2-11, Ex. A; Hansen Decl. ¶ 2-13; Rehm Decl. ¶ 4-8. Together, Plaintiffs' firms have more than 100 years of experience litigating FLSA collective actions. Shavitz Decl. ¶ 4-16; Gonzales Decl. ¶ 2-11, Ex. A; Hansen Decl. ¶ 2-13; Rehm Decl. ¶ 4-8. Plaintiffs' Counsel have litigated and settled hundreds of FLSA collective

actions against some of the nation's largest corporations.  Shavitz Decl. ¶ 15-16; Gonzales Decl.

¶ 2-11, Ex. A; Hansen Decl. ¶ 2-13; Rehm Decl. ¶ 4-8.

Plaintiffs' Counsel's rates per timekeeper, hours worked, and total billable time are listed

in their declarations.  Shavitz Decl. ¶ 57; Gonzales Decl. ¶ 12; Hansen Decl. ¶ 17; Rehm Decl. ¶

13.  Plaintiffs' Counsel's total fees are $2,161,989.00, not including the additional time to be

incurred with the settlement and administration.  Shavitz Decl. ¶ 55.  Plaintiffs' Counsel's total

costs are $57,502.64.  *Id.*  Plaintiffs' Counsel's total fees and costs are $2,219,491.64.  *Id.*

In a similar case in this District in 2019 where the plaintiffs' attorneys' fees were

separately negotiated from the plaintiffs' settlement amount, the court awarded fees based on

Shavitz Law Group's rates which were slightly less than what they seek here.  *Sykes*, 2019 U.S.

Dist. LEXIS 21767, at *25-27 (Mr. Shavitz's rate was $700 per hour and Ms. Duignan's rate was

$600 per hour; other plaintiffs' counsel's rates were $950 and $700 per hour).  Shavitz Law

Group's rates are slightly higher here due to the complexities of this litigation, the substantial

risks undertaken, and an appropriate rate enhancement for the contingency fee arrangement and

significant risk of non-payment.  "[T]his Court considers the rate claimed by Plaintiff's counsel

in the context of the financial risk Plaintiff's counsel took in prosecuting the case, including

delayed payment and the contingency fee agreement."  *Fox v. Pittsburg State Univ.*, 258 F. Supp.

3d 1243, 1270 (D. Kan. 2017).  "[T]he contingency risk should be reflected in the lodestar in the

form of a higher hourly rate for the attorney skilled and experienced enough to overcome this

risk."  *Id.*

Plaintiffs' Counsel's rates are similar to or equal to rates approved in the District of

Colorado and elsewhere for attorneys with similar levels of skill and experience as Plaintiffs'

Counsel here.  *E.g., Sykes*, 2019 U.S. Dist. LEXIS 21767, at *25-27; *Shaw v. Interthinx, Inc.*, No.

18

13 Civ. 1229 2015 U.S. Dist. LEXIS 52783 (D. Colo. Apr. 21, 2015) (In 2015, approving class action wage and hour settlement where plaintiffs' counsel's attorneys' rates were $650 per hour and non-legal staff rates were $150 per hour); *Amaraut v. Sprint/United Mgmt. Co*., No. 19 Civ. 411, 2021 U.S. Dist. LEXIS 147176, at *20-21 (S.D. Cal. Aug. 5, 2021) (approving wage and hour class and collective action settlement with plaintiffs' counsel's rates ranging from $600 to $1,005; Shavitz Law Group was plaintiffs' counsel and their rates were $700 (Mr. Shavitz), $625 (Mr. Palitz), $600 (Ms. Duignan), and $150 (paralegal Ms. Eifert)); *Johnson v. Himagine Solutions, Inc*., No. 20 Civ. 574, 2021 U.S. Dist. LEXIS 118410, at *22-23 (E.D. Mo. June 25, 2021) (Shavitz Law Group class settlement approved with lodestar crosscheck using rates of $700 for Mr. Shavitz, $650 for Mr. Quiles, and $150 for paralegals); *accord, e.g., Florece v. Jose Pepper's Rests., LLC,* No 20 Civ. 2339, 2021 U.S. Dist. LEXIS 208044, at *20-21 (D. Kan. Oct. 28, 2021) (finding that attorneys' hourly rates in FLSA litigation of $575 and $475 per hour were reasonable); *Hoffman v. Poulsen Pizza LLC*, No. 15 Civ. 2640, 2017 U.S. Dist. LEXIS 459, at *21-22 (D. Kan. Jan. 3, 2017) (approving hourly rates of $600, $450, and $400 in an FLSA case).

After deducting $57,502.64 for costs from the $1,600,000 fee and cost settlement, the total agreed upon fees for Plaintiffs' Counsel is $1,542,497.36. Plaintiffs' Counsel worked 3,477.1 total hours and their effective average hourly rate is $443.62, which will continue to decrease as additional work is performed. Shavitz Decl. ¶ 55. Such a rate is reasonable given the skill and experience needed to prevail in this litigation.

Moreover, there was a real risk of non-payment to Plaintiffs' Counsel. This Court granted Defendant's motion for summary judgment and Plaintiffs' Counsel nevertheless persisted in filing two appeals and prevailing at the Tenth Circuit. Shavitz Decl. ¶ 32-45. This

was a major accomplishment because the Tenth Circuit's reversal rate for civil cases is low –

ranging between 6.6% to 16% in 2019.  *See* Tenth Circuit Practitioner's Guide at p. 9, *available

at* https://www.ca10.uscourts.gov/sites/ca10/files/documents/downloads/2021PracGuideUpdate-

11thEdition.pdf (last visited January 5, 2022).  This litigation also required substantial resources,

both financially and in attorney and paralegal time, to litigate claims against a very aggressive

defendant.  Shavitz Decl. ¶ 65.  Plaintiffs' Counsel had to allocate sufficient staff to litigate,

which hindered Plaintiffs' Counsel's ability to take on new litigation matters.  *Id*. ¶ 64-65.

### 3.    *The Agreed-Upon Amount of Attorneys' Fees and Costs that Nelnet Agreed to Pay in Settlement is Reasonable and Should Be Approved*

Plaintiffs' Counsel spent 3,477.1 hours litigating these claims without payment for over 5

years.  Shavitz Decl. ¶ 57 (2,762.2 hours); Gonzales Decl. ¶ 12 (362.4 hours); Hansen Decl. ¶ 17

(319.6 hours); Rehm Decl. ¶ 13 (32.9 hours).  Plaintiffs' Counsel's combined lodestar is

$2,161,989.00.  Shavitz Decl. ¶ 57 ($1,694,665.00); Gonzales Decl. ¶ 12 ($240,000.00); Hansen

Decl. ¶ 17 ($211,204.00); Rehm Decl. ¶ 13 ($16,120.00).  The Parties engaged in back-and-forth

negotiations and ultimately reached an agreement on December 20, 2021 when Plaintiffs'

Counsel accepted Defendant's offer of $1,600,000.00 for their fees and costs.  Shavitz Decl. ¶

56.  In making this offer, Defendant likely had some indication what a reasonable fee to

Plaintiffs' Counsel would be based on its own attorneys' fees and costs to litigate this matter.

These fees and costs were separately negotiated from the Plaintiffs' settlement amounts and

represent a 28% reduction in Plaintiffs' Counsel's actually incurred fees and costs of

$2,219,491.64.  *Id.* ¶ 49, 55.  Plaintiffs' Counsel agreed to an across-the-board deduction to

avoid a second litigation with Defendant about the amount of fees claimed, the rates billed, and

the time spent on each task.  *Id.* ¶ 49.  Plaintiffs' Counsel deemed it appropriate to exercise

billing judgment in agreeing to this deduction to reach a settlement of their fee and cost claims.

*Id.  See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").   Defendant will pay Plaintiffs' Counsel's fees and costs in addition to Plaintiffs' settlement amounts.  Shavitz Decl. ¶ 49; Exhibit B (Agreement) at § II(D) and Exhibit E to Agreement.

Plaintiffs' Counsel's request for attorneys' fees and costs should be considered in light of the results they achieved for the Plaintiffs.  Through this settlement, Plaintiffs will receive ***all*** of their FLSA damages including liquidated damages.  *Supra* at pages 7-8.  Defendant is separately paying the costs of the settlement administration so it will not impact Plaintiffs' settlement shares.  Exhibit B at § II(B).  By any measure, Plaintiffs' Counsel achieved a great result for their clients.  Plaintiffs' Counsel dedicated the time and resources to achieve Plaintiffs' victory and this settlement.  Unlike Defendant's counsel who was guaranteed payment for their work on the case, Plaintiffs' Counsel was not.  If the appeal was lost, this case would have resulted in a significant loss of time and money and resources for Plaintiffs' Counsel.

Plaintiffs' Counsel respectfully requests that the Court approve the attorneys' fees and costs of $1,600,000.00 which the Parties have agreed to be reasonable and which Defendant has agreed to pay.

### 4.    *Plaintiffs' Request for Reimbursement of Costs Is Reasonable*

Plaintiffs' Counsel also seek reimbursement of their out-of-pocket costs. 29 U.S.C. § 216(b); *Sykes*, 2019 U.S. Dist. LEXIS 21767, at *27-28.  These costs are included in the $1,600,000.00 amount that the Parties agreed Defendant would pay to Plaintiffs' Counsel.  Plaintiffs' Counsel's costs total $57,502.64 and are outlined and categorized in their declarations.  Shavitz Decl. ¶ 60 ($56,057.66 in costs) and Ex. C; Gonzales Decl. ¶ 12 ($937.60 in costs); Rehm Decl. ¶ 11 ($507.38 in mileage costs).  Plaintiffs' costs include filing fees, the cost of Rust

Consulting, Inc. to administer the conditional certification notice and consent form, deposition transcripts, airfare, taxis, and hotel costs to travel to depositions and Court conferences, mileage, electronic discovery, and appellate printing costs.  Shavitz Decl. ¶ 60 and Ex. C; Gonzales Decl. ¶ 12; Rehm Decl. ¶ 11.

> ### D.    The Parties Request that the Court Approve Colorado Legal Services as the *Cy Pres* Recipient

Under the terms of the Agreement, if any checks remain uncashed after the 120-day period for the Plaintiffs to cash checks, Defendant shall distribute the funds associated with such checks to the *cy pres* designee, Colorado Legal Services.  Exhibit B (Agreement) at § II(G) ¶ 5. The *cy pres* doctrine in class action settlements "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Tennille v. W. Union Co*., 809 F.3d 555, 560 n.2 (10th Cir. 2015).  "A *cy pres* award is appropriate only if the beneficiary is the next best use for indirect class benefit and the *cy pres* beneficiary is related to the nature of a plaintiff's claims."  *Martinez v. 1859-Historic Hotels*, No. 19 Civ. 200, 2020 U.S. Dist. LEXIS 258055, at *12-13 (D. Colo. Dec. 18, 2020) (internal citations and quotations omitted).  Colorado Legal Services is a worthy *cy pres* recipient which provides free legal advice to low-income Coloradans. https://www.coloradolegalservices.org/node/1/what-we-do (last visited January 5, 2022).

If the Court does not approve the *cy pres* recipient, consistent with unclaimed property acts, the Settlement Claims Administrator shall transmit the amount associated with each uncashed check to the unclaimed property fund in the respective state in which the Opt-In Plaintiff resides (based on the Settlement Claims Administrator's last known address).  Exhibit B (Agreement) at § II(G) ¶5.

## CONCLUSION

For the foregoing reasons, the Parties jointly request that this Court approve the Parties'

Settlement Agreement as fair, reasonable, and binding on all Parties, and enter the proposed

Order attached as Exhibit A to the Shavitz Decl.

Respectfully submitted this 6th day of January 2022.

*s/Michael Palitz*
Michael Palitz
SHAVITZ LAW GROUP, P.A.
447 Madison Ave., 6th Floor
New York, NY 10022
Phone:  800.616.4000
Fax:  561.447.8831
Email:  mpalitz@shavitzlaw.com

Gregg I. Shavitz
Alan L. Quiles
Logan A. Pardell
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Phone:  561.447.8888
Fax:  561.447.8831
Email:  gshavitz@shavitzlaw.com
        aquiles@shavitzlaw.com
        lpardell@shavitzlaw.com

Brian D. Gonzales
THE LAW OFFICE OF BRIAN D. GONZALES,
PLLC
2580 East Harmony Road, Suite 201
Fort Collins, CO  80528
Phone:  970.214.0562
Email:  bgonzales@coloradowagelaw.com

Adam Hansen
Apollo Law LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Phone:  612.927.2969
Email:  adam@apollo-law.com

Jon Rehm
REHM BENNETT LAW FIRM P.C., L.L.O
3701 Union Drive, #200
Lincoln, NE 68516
Phone: (402) 420-1400
Email: jonrehm@rehmlaw.com

Dustin T. Lujan
LUJAN LAW OFFICE
1603 Capitol Avenue, Suite 310 A559
Cheyenne, WY 82001
Phone: (970) 999-4225
Email: wyoadvocate@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January 2022, a true and correct copy of the foregoing **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT** was served electronically on the following:

Richard B. Benenson, Esq.
Martine T. Wells, Esq.
Anna-Liisa Mullis, Esq.
Matthew C. Arentsen, Esq.
Nicholas R. Santucci, Esq.
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
rbenenson@bhfs.com
mwells@bhfs.com
amullis@bhfs.com
marentsen@bhfs.com
nstantucci@bhfs.com

Daniel Kaplan, Esq.
Charles Kaplan, Esq.
Perry, Guthery, Haase, & Gessford
233 South 13th Street, Suite 1400
Lincoln, Nebraska 68508
dkaplan@perrylawfirm.com
ckaplan@perrylawfirm.com

*s/Michael Palitz*
_____
Michael Palitz