IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01064-NYW

JEFF PETERSON, personal representative of the Estate of Andrew Peterson,
on behalf of the Estate and all similarly situated persons,

    Plaintiff,

v.

NELNET DIVERSIFIED SOLUTIONS, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This action is before the court on Plaintiffs' Unopposed Motion for Final Approval of Fair Labor Standards Act Settlement Agreement ("Motion for Approval" or "Motion") [Doc. 247, filed January 5, 2022]. The undersigned fully presides over this case pursuant to 28 U.S.C. § 636(c), the consent of the Parties [Doc. 11], and the Order of Reference dated June 26, 2017 [Doc. 12]. For the reasons stated in this Memorandum Opinion and Order, the Motion for Approval is **GRANTED**.

## BACKGROUND

Andrew Peterson ("Plaintiff" or "Mr. Peterson")[1] initiated this action on April 28, 2017, by filing a Complaint asserting a collective action under the Fair Labor Standards Act ("FLSA"),

---

[1] Andrew Peterson was the named Plaintiff in this action prior to June 4, 2020, when the court granted Plaintiffs' Unopposed Motion to Substitute and/or Change Caption, requesting to substitute Jeff Peterson, personal representative of the Estate of Andrew Peterson, as the named Plaintiff after Andrew Peterson's death. *See* [Doc. 234; Doc. 235]; *see also* [Doc. 224-1]. Although Jeff Peterson, personal representative of the Estate of Andrew Peterson, is now the named Plaintiff, this court will continue to refer to Plaintiff as "Mr. Peterson" without distinction between Andrew or Jeff.

29 U.S.C. § 216(b), for unpaid overtime wages "on behalf of himself and all current and former Account Managers and Call Center Representatives."[2] [Doc. 1]. Mr. Peterson worked for Defendant Nelnet, which is in the business of servicing loans, at its Aurora, Colorado location from approximately September 2011 to September 2014. [*Id.* at ¶¶ 10, 11]. Mr. Peterson alleged that Nelnet violated the FLSA by failing to pay him and other call center representatives premium overtime compensation for hours worked in excess of forty hours in a workweek. [*Id.* at ¶ 2]. In support of his claim, Mr. Peterson averred that Nelnet failed to accurately track or record the actual hours worked by CCRs as follows: "(i) [by] failing to provide [call center representatives] with a way to accurately record the hours they actually worked; (ii) permitting [call center representatives] to work before and after they 'clock in' to Nelnet's timekeeping system; and (iii) allowing work during uncompensated lunch breaks." [*Id.* at ¶ 6]. In his original Complaint, Mr. Peterson asserted claims for: (1) violation of the FLSA on behalf of himself and the collective ("First Cause of Action"); (2) violation of Colorado Minimum Wage Order on behalf of himself and a Rule 23 class of individuals ("Second Cause of Action"); and (3) violation of the Colorado Wage Act on behalf of himself and a Rule 23 class of individuals ("Third Cause of Action"). [Doc. 1]. Defendant subsequently filed a Motion to Dismiss, [Doc. 19], which was mooted when Plaintiff filed his Amended Complaint as a matter of right. *See* [Doc. 29; Doc. 30]. The Amended Complaint included the same three claims with additional factual detail. [Doc. 29]. Defendant filed an Answer to the Amended Complaint on October 5, 2017. [Doc. 37].

On January 31, 2018, Plaintiff filed a Motion for Court Authorized Notice Pursuant to 29 U.S.C. § 216(b) of the FLSA ("Motion for Conditional Certification"). [Doc. 50]. On April 25,

---

[2] When referring to "Plaintiff" or "Plaintiffs" the court intends to refer both to Mr. Andrew Peterson and the collective joined in this litigation.

2018, the court granted the Motion for Conditional Certification in part, allowing a collective to go forward as to Advisors, Collectors, and Flex Advisors for pre-shift uncompensated log-in time (collectively, "CCRs"). [Doc. 79]. Shortly thereafter, the parties stipulated to the following definition of the conditionally certified collective:

> Current and former Flex Advisors, Collectors, or Advisor Is who worked at Nelnet Diversified Solutions, LLC's Aurora, Colorado; Lincoln, Nebraska; and Omaha, Nebraska Customer Interaction Center locations at any time from July 15, 2014 to April 25, 2018 and who worked off-the-clock without compensation at the beginning of their shifts prior to clocking into the timekeeping system. Individuals who worked as Collectors in Direct Account Placement or "DAP" are not included in this collective definition.

[Doc. 82].

On June 29, 2018, the notice administrator mailed the FLSA collective action notice to the putative collective members who worked at the relevant locations in Aurora, Lincoln, and Omaha. [Doc. 92]. Ultimately, 359 individuals opted into the FLSA collective, a number of whom have since been dismissed from the collective for unrelated reasons, primarily failure to participate in discovery. *See* [Doc. 99; Doc. 100; Doc. 101; Doc. 102; Doc. 105; Doc. 108 at 11 n.3; Doc. 247 at 3].

On November 16, 2018, the Parties submitted a Joint Status Report, in which Plaintiff indicated "[t]he Plaintiff is no longer pursuing any Rule 23 class action claims." [Doc. 117 at 1]. Plaintiff further indicated "[i]f the case reaches a trial, such trial would therefore be narrowed to the compensability of activities that plaintiff alleges he was required to perform to become call-ready before clocking in pre-shift and related potential damages issues." [*Id.* at 2]. The Parties then indicated that they believed trial could be completed in five days. [*Id.*]. Based on this Status Report, the court dismissed the Second and Third Causes of Action from the Amended Complaint and ordered the Parties to file a Supplemental Scheduling Order. [Doc. 119]. Following a Motion to Reconsider based on an ambiguity as to whether the Aurora-based FLSA collective members

were still asserting their Colorado state law claims individually if not as a class, the court affirmed its prior order and denied further relief, finding that the relevant claims remaining were the conditional class's FLSA claims and Mr. Peterson's individual state law claims. [Doc. 128; Doc. 153].

The Parties then filed cross-Motions for Summary Judgment, [Doc. 158; Doc. 168], and Defendant filed a Motion for Decertification, [Doc. 171]. After full briefing by the Parties, this court granted Defendant's Motion for Summary Judgment, denied Plaintiffs' Motion for Summary Judgment, and denied Defendant's Motion for Decertification as moot. [Doc. 186; Doc. 189]. In conjunction with its ruling, the court awarded Defendant its costs pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and D.C.COLO.LCivR 54.1. Final judgment entered on September 3, 2019, after the entry of an Amended Memorandum Opinion and Order. [Doc. 189; Doc. 190].

Plaintiffs filed a Notice of Appeal ("First Notice of Appeal") to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") on September 16, 2019, on behalf of Mr. Peterson and the Opt-In Plaintiffs. [Doc. 191]. Thereafter, Defendant submitted its Bill of Costs to this court, [Doc. 194], and the Parties litigated the amount of Defendant's taxable costs and the types of costs that Defendant sought to tax against Plaintiffs, *see* [Doc. 196; Doc. 202–06; Doc. 208–11; Doc. 215; Doc. 223; Doc. 225; Doc. 230; Doc. 232–33]. On June 9, 2020, Plaintiffs filed another Notice of Appeal ("Second Notice of Appeal") to the Tenth Circuit, related to the taxable costs awarded. *See* [Doc. 236].

On March 12, 2021, the Tenth Circuit remanded this action to this court for the limited purpose of amending the Final Judgment to correct a clerical error, [Doc. 240], and the court entered an Amended Final Judgment on March 15, 2021, [Doc. 241]. On October 8, 2021, the

Tenth Circuit issued an Opinion reversing this court's Order granting Defendant's Motion for Summary Judgment and remanded this action to this court for further proceedings consistent with that Opinion. [Doc. 243 at 31]. Because Defendant was no longer the prevailing party, the Tenth Circuit also reversed the court's Order awarding costs to Defendant. [*Id.* at 32]. On December 17, 2021, the Tenth Circuit issued its mandate and a Statement of Costs in favor of Plaintiff. [Doc. 244; Doc. 245]. On December 22, 2021, the Parties jointly filed a Notice of Settlement. [Doc. 246]. On January 5, 2022, Plaintiffs filed the instant Motion for Approval. [Doc. 247].

## ANALYSIS

Within the context of a lawsuit brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations, and upon consideration of whether the proposed settlement is fair, the district court may enter a stipulated judgment approving the agreement and dismissing the action. *Baker v. Vail Resorts Management Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982)). Approval is appropriate upon demonstration that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker*, 2014 WL 700096, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1354).

**I.** *Bona Fide* **Dispute**

For the court to discern whether a *bona fide* dispute exists, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5)

5

if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Baker*, 2014 WL 700096, at *1.

This court finds that Plaintiffs adequately describe the dispute. *See* [Doc. 247 at 2–7]. In this action, Plaintiffs asserted that Defendant did not pay for pre-shift time spent booting up their computer and launching Citrix and the intranet before they clocked in; while Defendant argued that the pre-shift activity time in this case was not compensable under the FLSA because it was not integral and indispensable to the performance of Plaintiffs' principal activities and, even if the time booting up the computer and launching Citrix and the intranet were integral and indispensable, that it was nonetheless not compensable because it constituted *de minimis* activity. *See* [Doc. 243 at 2]. This court granted summary judgment in favor of Defendant, finding that although the pre-shift time was integral and indispensable to the performance of Plaintiff's principal activities, the pre-shift time was *de minimis*. [Doc. 189]. While the Tenth Circuit agreed that the pre-shift time was integral and indispensable, it reversed this court's award of summary judgment on the basis that such pre-shift time was not *de minimis*. *See* [Doc. 243; Doc. 247 at 10–11]. On December 17, 2021, the Tenth Circuit issued its mandate, and the case was remanded back to this court for further proceedings consistent with the Tenth Circuit's ruling. [Doc. 245]. Had the Parties not settled, this court would have reopened the case, *inter alia*, for the purpose of determining damages. Thus, I conclude that a *bona fide* dispute led to the settlement negotiation and resulting terms.

## II. Fair and Equitable Settlement Agreement

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and

6

lowest paid … employees who lack[ ] sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours.") (citation omitted)). "Normally, a settlement is approved where it is the result of "contentious arm's-length negotiations, which were undertaken in good faith by counsel … and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief … ." *Felix v. Thai Basil at Thornton, Inc.*, No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May. 6, 2015) (citation and quotations omitted).

The Tenth Circuit considers the following factors in determining whether a proposed settlement is fair, reasonable, and adequate: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). Courts in this District apply the same four factors to their review of a settlement agreement resolving FLSA claims in a collective and individual action. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130 (D. Colo. 2016); *Morton v. Transcend Service, Inc.*, No. 15-cv-01393-PAB-NYW, 2017 WL 977812, at *2 (D. Colo. Mar. 13, 2017); *see also Albu v. Delta Mechanical Inc.,* No. 13-cv-03087-PAB-KMT, 2015 WL 4483992, at *3 (D. Colo. June 30, 2015) ("Courts considering both individual and collective settlements under the

FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e)." (citations omitted)).

Having reviewed the Motion and proposed Settlement Agreement, [Doc. 247-1 at 26–41], the court finds that the settlement negotiated by counsel is fair, reasonable, and adequate. The Settlement Agreement resulted from arms'-length negotiations by experienced Plaintiffs' counsel. *See* [Doc. 247 at 7]. Under the terms of the Settlement Agreement, Defendant agrees to pay the sum of $96,392.48 ("Settlement Amount") to settle the claims in this action. *See* [Doc. 247 at 7–8; Doc. 247-1 at 27–28]. The Settlement Amount includes "$87,492.48 in back pay and liquidated damages," [Doc. 247-1 at 28]—a sum which the Parties reached "[u]sing calculations from Defendant's expert report along with the time records and shift data," [Doc. 247 at 7]. Plaintiffs represent that the settlement amount covers "all unpaid wages and liquidated damages under the FLSA and for the full statute of limitations" and that the release of claims in the Settlement Agreement is "appropriately tailored to cover the claims in this case[.]" [*Id.* at 11–12]; *see also* [Doc. 247-1 at 34].[3] Accordingly, the court finds that the value of an immediate recovery outweighs the possibility of future relief for Plaintiffs. In addition, Plaintiffs are represented by

---

[3] The Release section of the proposed Settlement Agreement provides that

> Plaintiffs shall forever and fully release Nelnet and any and all of its parents and subsidiaries, from all claims, whether known or unknown, through the applicable Timeframe, that were or that could have been brought for unpaid overtime wages under the FLSA during Plaintiffs' employment as CCRs including FLSA claims for unpaid wages, unpaid overtime wages, liquidated damages, attorneys' fees, and costs (the "FLSA Claims"). However, this Release does not compromise, waive, prejudice, or apply to any other claims, including the Colorado state law claims as currently pled in *Newell v. Nelnet Diversified Solutions LLC*, No. 2019CV031437 (District Court, Denver County, Colorado).

[Doc. 247-1 at 34].

experienced counsel who assert that the terms of the settlement are fair and reasonable, *see* [*id.* at 11–12], and the court finds no reason to question this assessment.

***Service Awards.*** The Settlement Amount also includes the following service awards for which Plaintiffs seek the court's approval: (1) $6,000 to Jeff Peterson as personal representative of the Estate of Andrew Peterson, and (2) $100 to each of 29 Opt-In Plaintiffs who were deposed during discovery. [*Id*. at 7–8, 12–13]; *see also* [Doc. 247-1 at 28, 30–31].

"The reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement." *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). However, "reasonable incentive payments have become common for class representatives, and, apparently by analogy, for FLSA named plaintiffs as well." *Id.* (internal quotation marks and citations omitted). When considering the appropriateness of a service award, courts consider the following factors: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010); *see also Thompson*, 2018 WL 2183988, at *3 (applying these factors in the context of a FLSA collective action).

Plaintiffs represent that "Plaintiff and the Opt-In Plaintiffs were instrumental in identifying the alleged wage violations and building the case," including that "Jeff Peterson stepped in as personal representative of Andrew Peterson's estate to fulfill the role as Named Plaintiff after his son passed away and was willing to see this litigation through to the end." [Doc. 247 at 13]. In addition, Jeff Peterson "provided deposition testimony in this case, responded to discovery requests, and produced documents." [*Id.*]. With respect to the service award to the Opt-In

9

Plaintiffs, Plaintiffs contend that the $100 award "cover[s] the $40.00 witness fee [the 29 Opt-In Plaintiffs] are entitled to per 28 U.S.C. 1920(3)," [*id.* at 8][4]; and those individuals "also prepared for depositions with Plaintiffs' Counsel and provided deposition testimony and responded to Defendant's discovery requests," [*id.* at 13].  The court finds the foregoing justifies the service awards and they are therefore approved.

***Purpose of the FLSA.***  The court considers next whether the settlement agreement undermines the purpose of the FLSA, "which is to protect employees' rights from employers who generally wield superior bargaining power." *Morton*, 2017 WL 977812, at *2.  Factors that may cause a court to reject a proposed settlement include (1) the presence of other employees similarly situated to the claimant, (2) a likelihood that the claimant's circumstance will recur, and (3) whether the defendant had a history of FLSA non-compliance. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130 (D. Colo. 2016).

The Settlement Agreement here is for Plaintiffs and those Opt-In Plaintiffs allowed for by conditional certification of a collective action.  Based on the record before this court, there is no indication that the alleged violations are likely to recur.  And there is no indication in the record that Defendant has a history of non-compliance with the FLSA.  In addition, any further litigation in this matter would likely yield no benefit to Plaintiffs given Plaintiffs' assertion that "[u]nlike a typical FLSA settlement where there is a compromise in the amount of damages owed to the plaintiffs," the instant Settlement Agreement "provides full FLSA damages to Plaintiff and the Opt-Ins including all unpaid wages and liquidated damages under the FLSA for the full statute of

---

[4] Although Plaintiffs cite to 28 U.S.C. 1920(3) in support of their assertion regarding witness fees, the court notes that that statute addresses taxation of costs, and not witness fees. *See* 28 U.S.C. § 1920; *see also* 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance.").

limitations." [Doc. 247 at 11]. I find that the settlement agreement does not run afoul of the policy concerns underpinning the FLSA.

## III. Attorney's Fees

Finally, this court considers whether the amount provided for in the Settlement Agreement for Plaintiffs' attorney's fees is reasonable. Title 29 U.S.C. § 216(b) requires that settlement agreements in FLSA cases include an award of "a reasonable attorney's fee … and costs of the action." "Determination of the amount and reasonableness of an attorney's fees" is within the court's discretion. *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *4 (D. Colo. Mar. 29, 2018); *see also Law v. Nat'l Collegiate Athletic Ass'n,* 4 Fed. App'x. 749, 751 (10th Cir. 2001).

There is a general preference that parties reach an agreement regarding the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). However, the court must nonetheless conduct an independent examination of whether the fees are reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351–52 (11th Cir. 2009) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). Therefore, counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Generally, the starting point for any calculation of a reasonable attorney's fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.* at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996). The court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *See Hensley*, 461 U.S. at 436–37; *see also White v. Chafin*, No. 13-

11

cv-01761-CMA-MJW, 2016 WL 9735066, at *1 (D. Colo. Sept. 23, 2016) (noting that "[t]he amount of the fee award is committed to the district court's discretion").  In addition, the Local Rules of Civil Practice for this District requires that a motion for attorney's fees be supported by affidavit.  D.C.COLO.LCivR 54.3.  Though not presented as a motion for attorney's fees, this court extends such requirement to this context because the Parties are seeking the court's approval of a privately negotiated amount for attorney's fees and costs.

Here, Plaintiffs ask the court to approve a sum of $1,600,000 for attorney's fees and costs, which Defendant has agreed to pay under the proposed Settlement Agreement. [Doc. 247 at 8, 14]; *see also* [Doc. 247-1 at 31–32, 56].  Plaintiffs assert that the amount is "approximately 72% of fees and out-of-pocket costs incurred by Plaintiffs' counsel." [Doc. 247 at 8].  They also assert that Plaintiffs' counsel "anticipate spending additional time overseeing the settlement and administration" thereof, and "[t]he $1,600,000 is intended to compensate Plaintiffs' Counsel for the additional work to occur in the future." [*Id.* at 8 n.3].

For support, Plaintiffs cite to the Declaration of Gregg I. Shavitz, [Doc. 247-1 at 14–16 (¶¶ 49, 55)]; the proposed Settlement Agreement, [*id.* at 31–32]; and a document titled "Amendment to Settlement Agreement" ("Amendment"), [*id.* at 56], which collectively reflect that, in accordance with the terms of the Settlement Agreement, the Parties separately negotiated the attorneys' fees and costs to be paid to Plaintiffs' counsel after they reached an agreement on the amount to be paid to Plaintiffs. [Doc. 247 at 8].  Plaintiffs represent that their counsel collectively "incurred fees and costs of $2,219,491.64" from performing 3,477.1 hours of work.  [*Id.* at 14].

In Mr. Shavitz's declaration, he attests that his firm has been focused on representing workers in wage and hour matters for the past 22 years, including claims based upon individual and class-wide violations of state and federal wage and hour laws.  [Doc. 247-1 at 1–2 (¶¶ 1, 4)].

He also attests to the background and qualifications of the attorneys, legal assistants and/or paralegals at his firm who have performed work on this case. *See* [*id.* at 2–6 (¶¶ 7–14)]. Mr. Shavitz states that "[a]s of January 6, 2022, SLG has spent 2,762.2 hours litigating the claims and its total lodestar is $1,694,665.00." [*Id.* at 16 (¶ 57)]. Mr. Shavitz also provides a chart reflecting the rates, hours, and total amount incurred by each individual who worked on this action at his firm. [*Id.* at 16–18]. Further, Mr. Shavitz states that his firm "also incurred $56,057.66 in litigation costs," which he contends were "incidental and necessary to the prosecution of this litigation," as well as deposition transcript costs. [*Id.* at 18–19 (¶¶ 60–62)]. Mr. Shavitz also provides nearly 200 pages of receipts to support his request for litigation costs. *See* [*id.* at 59–239].

In addition to the Declaration of Mr. Shavitz, Plaintiffs also submit declarations of their other counsel: Brian D. Gonzales, Adam Hansen, and Jonathan V. Rehm. *See* [Doc. 247-2; Doc. 247-3; Doc. 247-4]. Mr. Gonzales' declaration attests to his background working almost exclusively in wage and hour litigation under the FLSA, [Doc. 247-2 at ¶ 3]; and states that, by the time this case is resolved, his firm "estimates it will have devoted approximately 340 hours to litigating this matter, including 22.4 hours of associate time[,]" and "expended $937.60 in costs for filing fees and mileage," [*id.* at ¶ 12]. Mr. Gonzales asserts that his firm's "total attorney's fees incurred in prosecuting this lawsuit likely will exceed $240,000." [*Id.* at ¶ 12]. For support, Mr. Gonzales purports to attach to his declaration the "2018 edition of the National Law Journal's annual Survey of Law Firm Economics," which he claims "reports a median billing rate of $460 per hour and a top ten percent rate of $560 per hour for lawyers in the mountain states with over 21 years of experience." [*Id.* at ¶ 13]. However, no such survey is attached to Mr. Gonzales' declaration. *See* [*id.*]. In Mr. Hansen's Declaration, he states that he became involved with this case in August 2019, after this court granted Defendant's Motion for Summary Judgment. [Doc.

13

247-3 at ¶ 6]. Mr. Hansen also provides a summary of his background performing appellate litigation; his hourly rate and the hourly rates for another attorney and law clerk who also worked on the appeal of this case; the total number of hours worked (319.6); and a purported "Lodestar" of fees incurred ($211,204). [*Id.* at ¶¶ 13, 17–18]. Finally, in Mr. Rehm's Declaration, he provides a summary of his background, stating he has "represented workers in workers' compensation claims and employment law cases in state and federal courts in Nebraska" for nearly 17 years. [Doc. 247-4 at ¶¶ 4, 6]. He also describes the work he performed in this action, and provides his hourly rate, the number of hours worked (32.9), and a purported "total lodestar of $16,120.00." [*Id*. at ¶¶ 10–13].

The court has reviewed the Parties' submissions[5] and finds the attorney's fees and costs requested are reasonable in light of the issues presented in this action and the time and effort spent adjudicating this case since 2017.[6] *See Bracamontes v. Bimbo Bakeries USA, Inc.*, No. 15-cv-02324-RBJ-NYW, 2018 WL 6790171, at *3 (D. Colo. Oct. 10, 2018) ("The Parties indicate that Defendant agreed to pay Plaintiffs' reasonable attorney's fees and costs incurred during this

---

[5] At the outset, the court notes that the total sum of the hours worked as represented by all of Plaintiffs' counsel does not equal 3,477.1 hours. *See* [Doc. 247 at 14]. Instead, Mr. Shavitz represents that his firm has performed 2,762.2 hours of work, [Doc. 247-1 at 16 (¶ 57)]; Mr. Gonzales represents that his firm has worked an "estimate[d]" amount of 340 hours, [Doc. 247-2 at ¶12]; Mr. Hansen represents that his firm has worked a total of 319.6 hours, [Doc. 247-3 at ¶ 17]; and Mr. Rehm attests that his firm has worked a total of 32.9 hours, [Doc. 247-4 at ¶ 13]. The sum of those numbers is 3,454.7.

[6] The court notes Mr. Gonzales's declaration is deficient given that he fails to identify the number of attorneys who worked on this case, *see* [Doc. 247-2 at ¶ 12 (referencing general "associate time")]; how many hours each individual worked, [*id.* (stating he "estimates" that his firm "will have devoted approximately 340 hours to litigating this matter")]; or the total amount of fees his firm has incurred thus far, [*id.* (stating "the Firm's total attorney's fees incurred in prosecuting this lawsuit likely will exceed $240,000")]. However, the court does not find that these deficiencies overcome Mr. Shavitz's representations in his declaration, standing alone, which reflect that the total amount of fees and costs his firm has accrued surpass the $1.6 million award for attorneys' fees and costs that Defendant has agreed to pay. *See* [Doc. 247-1 at 16–18 (¶ 57)].

14

litigation in the settlement agreement, and that the Parties negotiated the amount of attorney's fees separate and distinct from the negotiated payments to Plaintiffs. Having engaged in several rounds of settlement negotiations with the Parties, I agree that the attorney's fees and costs provided for in the settlement agreement are reasonable."), *report and recommendation adopted*, ECF No. 153.

### III. *Cy Pres* Award

The Settlement Agreement also contains a *cy pres* provision that would distribute unclaimed funds to a third party in should the Court grant final approval. (ECF No. 54-1 at 8.) Plaintiffs request that the court approve a *cy pres* award to Colorado Legal Services. [Doc. 247 at 22]. The Tenth Circuit has recognized that the *cy pres* doctrine in class action settlements "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries," but has not otherwise expounded on the doctrine. *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). District courts in the Tenth Circuit have approved *cy pres* awards to third-party beneficiaries in class action settlements. *See In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *5 (D. Colo. Aug. 28, 2013); *Childs v. Unified Life Ins. Co.*, 2012 WL 13018913, at *5 (N.D. Okla. Aug. 21, 2012). A *cy pres* award is appropriate "only if the beneficiary is the next best use for indirect class benefit" and the "cy pres beneficiary ... [is] related to the nature of a plaintiff's claims." *Bailes v. Lineage Logistics, LLC*, 2016 WL 4415356, at *7 (D. Kan. Aug. 19, 2016) (internal quotation marks omitted and alterations incorporated); *but see In re Crocs*, 2013 WL 4547404, at *5 (preliminarily approving *cy pres* provision that awarded unallocated funds to an charitable organization with no immediately discernable ties to the purpose of the lawsuit). Courts also evaluate whether beneficiaries are "carefully chosen to account for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of silent class members,

including their geographic diversity." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012). Courts have rejected *cy pres* awards when the parties failed to identify a proposed beneficiary, or when the beneficiary was "so unrelated to the claims" that the class members would not benefit. *Better v. YRC Worldwide Inc.*, 2013 WL 6060952, at *6 (D. Kan. Nov. 18, 2013); *Bailes*, 2016 WL 4415356, at *7.

Although the foregoing cases acknowledge *cy pres* awards in class action settlements rather than FLSA collective settlements, *see, e.g.*, *Diaz v. Lost Dog Pizza, LLC*, No. 17-cv-2228-WJM-NYW, 2019 WL 2189485, at *3 (D. Colo. May 21, 2019) (recognizing that "[t]he Tenth Circuit has recognized [ ] the *cy pres* doctrine in class actions settlements"), this court can discern no reason to preclude a *cy pres* award in the context of the instant FLSA collective action. *Cf. Thompson*, 2018 WL 2183988, at *3 (recognizing that "'reasonable incentive payments' have become common for class representatives and, apparently by analogy, for FLSA named plaintiffs as well" (citations omitted)). Here, the *cy pres* provision in the proposed Settlement Agreement provides that, if any checks remain uncashed after the 120-day period for Plaintiffs to cash checks, Defendant shall distribute the funds associated with such checks to Colorado Legal Services. [Doc. 247-1 at 36]. Plaintiffs assert that "Colorado Legal Services is a worthy *cy pres* recipient" as it "provides free legal advice to low-income Coloradans." [Doc. 247 at 22].

The allegations forming the basis for this lawsuit are that Defendant violated the FLSA by failing to pay Plaintiffs premium overtime compensation for hours worked in excess of forty hours in a workweek. *See* [Doc. 29]. According to the website for Colorado Legal Services, this organization provides "[l]egal help for low-income Coloradans seeking assistance with civil legal needs."   *See*   Colorado   Legal   Services,   *What   We   Do*,   *available   at* https://www.coloradolegalservices.org/node/1/what-we-do (last visited Feb. 7, 2022). The court

finds that the *cy pres* award directing the unclaimed settlement funds to Colorado Legal Services to be fair and reasonable, and the next best use of funds to provide an indirect class—here, collective—benefit.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Plaintiffs' Unopposed Motion for Final Approval of Fair Labor Standards Act Settlement Agreement [Doc. 247] is **GRANTED**;

(2) The Parties' proposed Settlement Agreement [Doc. 247-1 at 26–41] is **APPROVED**;

(3) Plaintiff Jeff Peterson, personal representative of the Estate of Andrew Peterson, is **AWARDED** a service award for serving as the class representative in the amount of $6,000;

(4) The 29 Opt-In Plaintiffs identified by the Parties, *see* [Doc. 247-1 at 30–31], each are **AWARDED** a service award for participating in discovery in the amount of $100;

(5) Plaintiffs' counsel are awarded attorneys' fees and costs in the amount of $1,600,000;

(6) The Parties and Settlement Administrator are **DIRECTED** to proceed with administration of the settlement checks, as set forth in the Settlement Agreement;

(7) The Court **SHALL RETAIN** jurisdiction over the interpretation and implementation of the Settlement Agreement; and

(8) The Clerk of the Court **SHALL TERMINATE** the case. The parties shall bear their own costs except as provided above.

DATED: February 10, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge